IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA S. HEIER | ) | CASE NO. |
| 1143 Frost Road #E | ) | |
| Streetsboro, Ohio 44241 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| BEAUTY CALL, LLC. | ) | |
| d/b/a Studio B.C./Beauty Call | ) | **(Jury Demand Endorsed Hereon)** |
| 9832 Valley View Road | ) | |
| Macedonia, Ohio 44067 | ) | |
| | ) | |
| SERVE ALSO: | ) | |
| RONI CZIKA | ) | |
| STATUTORY AGENT | ) | |
| 8801 Olde 8 Road | ) | |
| Northfield, Ohio 44067 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| RONI CZIKA | ) | |
| 211 Baptist Circle | ) | |
| Northfield, Ohio 44067 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| JEFF CZIKA | ) | |
| 211 Baptist Circle | ) | |
| Northfield, Ohio 44067 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jessica S. Heier by and through undersigned counsel, as his Complaint against the

Defendants, states and avers the following:

## PARTIES & VENUE

1. Heier is a resident of the city of Streetsboro, Portage County, Ohio.

The Employee's Attorney.™



2. Beauty Call, LLC. d/b/a/ Studio B.C./Beauty Call ("Studio B.C.") is an Ohio Limited Liability Company with a primary place of business located at 9832 Valley View Road, City of Macedonia, Summit County, Ohio.

3. Roni Czika is a resident of the city of Northfield, Summit County, Ohio.

4. Jeff Czika is a resident of the city of Northfield, Summit County, Ohio.

5. Defendants are, and at all times hereinafter mention, were engaged in related activities performed through unified operation of common control for a common business purpose, and, at all times hereinafter mentioned, was an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act.

6. At all times herein, Heier was acting in the course and scope of her employment.

## JURISDICTION AND VENUE

7. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. §1332 in that Plaintiff is alleging a federal law claim arising under the FLSA, 29 U.S.C. §201, *et seq*.  Thus, this Court has original jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. §1331.  Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

8. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendants operate and conduct business.

## FACTS

9. Heier is a former employee of Studio B.C.

10. On or about May 1, 2017, Roni Czika hired Heier to be lead stylist and salon manager at Studio B.C.

11. Defendants agreed to pay Heier $8.75 per hour worked at Studio B.C.

The Employee's Attorney.™



12. Defendants also agreed to pay Heier monthly a monthly commission of 20% of the total value of salon services performed.

13. Heier was hired as an Independent Contractor, however, this was a mischaracterization of her employment status at Studio B.C.

14. Heier did not have flexibility in her scheduled and was required to work the hours set by Roni Czika.

15. Heier was required to complete services for the clients assigned to her by Roni Czika.

16. Heier worked a minimum of 35 hours per week at Studio B.C.

17. Heier regularly worked 45 to 50 hours per week at Studio B.C. with Defendants' approval.

18. Heier was never given a paycheck for her hours worked from May 1, 2017 through May 6, 2017.

19. Heier worked approximately 34 hours from May 1, 2017 through May 6, 2017.

20. On May 22, 2017, Defendants paid Heier $954.86 as her commission for May 1, 2017 thought May 21, 2017 ("May Commission Check").

21. When Heier attempted to deposit this check into her bank account, Defendants put a stop payment order on the May Commission Check.

22. The May Commission Check was never reissued to Heier and so Heier never received her earned commissions from May 1, 2017 through May 21, 2017.

23. On May 25, 2017, Defendants paid Heier $467.00 for her hours worked from May 9, 2017 through May 20, 2017.

24. Heier worked approximately 91.52 hours during this pay period.

25. This check amounted to Heier being paid $5.10 per hour.

26. Defendants never paid Heier commission for May 22, 2017 through May 31, 2017.

The Employee's Attorney.™



27. Defendants cited a lack of available funds when questioned about Heier's insufficient paychecks during the month of may.

28. Defendants agreed to put Heier's cell phone bill and car payment on Studio B.C.'s credit card until they had the available funds to provide her with a paycheck.

29. On or around June 5, 2017, with Roni Czika's written permission, Heier paid her $418 car payment and $125 Verizon Wireless cell phone bill using the Studio B.C. credit card.

30. On June 7, 2017, Defendants paid Heier $118.26 for her hours worked from May 21, 2017 through June 3, 2017.

31. Heier worked approximately 70 hours from May 21, 2017 through June 3, 2017.

32. This amounted to Defendants paying Heier $1.68 per hour.

33. When questioned about the amount of Heier's paycheck, Defendants stated that they had taken out the $568 advance they had given Heier on the Studio B.C. credit card.

34. It was never discussed with Heier that the payments on the Studio B.C. credit card would be a payroll advance.

35. The payments on the Studio B.C. credit card were to be a partial repayment to Heier for Defendants cancelling her May Commission Check.

36. On June 16, 2017, Roni Czika disputed the payments on the credit card.

37. When Heier questioned Czika about the disputed payments, Czika claimed that she did not know what had happened.

38. Heier's car payment and cell phone bill were never paid.

39. Heier was never given the $568 that was taken out of her June 7, 2017 paycheck for the credit card payments.

40. On June 21, 2017, Defendants paid Heier $590 in cash as payment for her hours worked from June 5, 2017 through June 17, 2017.

The Employee's Attorney.™



41. Heier worked approximately 70 hours from June 5, 2017 through June 17, 2017.

42. On July 1, 2017, Defendants paid Heier $61.87 for her hours worked from June 19, 2017 through June 30, 2017.

43. Heier worked approximately 42.08 hours from June 19, 2017 through June 22, 2017.

44. The July 1, 2017 paycheck amounted to Defendants paying Heier $1.47 per hour from June 19, 2017 through June 22, 2017.

45. Heier was never reissued a May Commission check.

46. Heier was never paid any commission for the month of June.

47. When questioned about June's commission payment, Defendants told Heier that the commission was to be 20% of the services that she individually performed despite previously agreeing to pay her 20% of the total services performed by the salon.

48. On June 22, 2017, Defendants terminated Heier after Heier questioned them regarding their unlawful payroll practices and her missing paychecks, overtime payments, and commission checks.

49. Heier was never paid overtime during her employment with Defendants.

50. Upon information and belief, Roni Czika would retroactively adjust Heier's timecards in the payroll system to avoid any record of Heier working overtime.

51.  After her termination from Studio B.C., Heier obtained employment at Evolutions Salon.

52. Shortly after beginning her employment at Evolutions, the manager of Evolutions told Heier that Defendants were claiming Heier had stolen the credit card from Studio B.C.

53. Heier was then terminated from Evolutions and remains unemployed to date.

### COUNT I: MINIMUM WAGE VIOLATIONS

54. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

The Employee's Attorney.™



55. An employment relationship existed between Heier and Studio B.C.

56. Pursuant to Ohio Rev. Code §4111 and 29 U.S.C. §206, an employer must pay a non-exempt employee at least the statutorily required minimum wage for all hours worked.

57. Studio B.C. refused to pay Heier statutorily mandated minimum wages for hours Heier worked for Studio B.C. in May and June of 2017.

58. During the period that Heier refused to pay Heier minimum wages, Heier was not exempt for the purposes of either Ohio Rev. Code §4111 or 29 U.S.C. §206.

59. As a direct and proximate result of Studio B.C.'s failure to pay Heier her lawfully earned minimum wages, Heier suffered damages.

60. Studio B.C. willfully and/or intentionally violated Ohio Rev. Code §4111 and 29 U.S.C. §206.

61. Studio B.C. acted in bath faith in violating Ohio Rev. Code §4111 and 29 U.S.C. §206.

62. As a result of Studio B.C.'s failure to pay Heier her lawfully earned minimum wages, pursuant to R.C. §4111, Studio B.C. is liable to Heier for the full amount of the minimum wage rate, and for costs and reasonable attorneys' fees as may be allowed by the Court.

63. As a result of Studio B.C.'s failure to pay Heier her lawfully earned minimum wages, pursuant to 29 U.S.C. §216(b), Studio B.C. is liable to Heier for the full amount of the overtime wage rate, an additional amount as liquidated damages, as well as costs and reasonable attorney fees.

## COUNT II: FAILURE TO MAKE SEMIMONTHLY WAGE PAYMENTS IN VIOLATION OF R.C. §4113.15

64. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

65. Pursuant to R.C. §4113;15(A), "Every individual, firm, partnership, association, or corporation doing business in this state shall, on or before the first day of each month, pay

all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

66. Heier demanded that Studio B.C. pay her wages on time.

67. Studio B.C. refused to pay Heier her wages.

68. Studio B.C.'s conduct violated R.C. §4113.15.

69. As a direct and proximate result of Studio B.C.'s conduct, pursuant to R.C. §4113.15(B), Studio B.C. is liable to Heier for her unpaid wages, and an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed, or two hundred dollars, whichever is greater.

## COUNT III: VIOLATION OF THE FAIR LABOR STANDARDS ACT: FAILURE TO PAY OVERTIME

70. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. During all times material to this Complaint, Heier was not exempt from receiving minimum wage under the FLSA because, *inter alia*, she was not an "executive," "computer," "administrative," or "professional" employee, as those terms are defined under the FLSA, 29 C.F.R. §541.0, *et seq*.

72. During all times material to this Complaint, Defendants violated the FLSA with respect to Heier by, *inter alia*, failing to compensate her at time-and-one-half her regular rates of pay for any hours worked in excess of forty (40) hours per workweek.

73. During all times material to this Complaint, Defendants knew that Plaintiff was not exempt from the minimum wage and overtime obligations imposed by the FLSA.

The Employee's Attorney.™



74. Defendants also knew that they were required to pay Plaintiff at least the applicable minimum wage and overtime obligations imposed by the FLSA.

75.  Defendants also knew that they were required to pay Plaintiffs at least the minimum wage, plus overtime compensation at a rate of one and one-half her regular rate for hours worked in excess of forty (40) hours per workweek.

76. Despite such knowledge, Defendants willfully withheld and failed to pay the minimum wage and overtime compensation to which Plaintiff is entitled.

77. In violating the FLSA, Defendants acted willfully, without a good faith basis, and in reckless disregard of clearly applicable FLSA provisions.

78. As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. §216 (b), Defendants are liable to Plaintiff for the full amount of the required minimum wage reate, an additional amount as liquidated damages, as well as costs and reasonable attorney fees.

## **COUNT IV: UNJUST ENRICHMENT**

79. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. In performing the duties of Salon Manager and Lead Stylist for Defendants, Heier conferred a benefit upon Defendants.

81. Defendants knew that Heier performed the duties of a Salon Manager and Lead Stylist for Defendants.

82. Defendants retained the benefit of Heier's performance of the duties of a  Salon Manager and Lead Stylist under circumstances where it was unjust to do so.

83. As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.



### COUNT V: PROMISSORY ESTOPPEL

84. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. Defendants made clear and unambiguous promises to Heier relative for Heier's compensation for Heier's performance of services for Defendants.

86. Heier relied on these promises when making financial arrangements for her car and cellular phone bill.

87. Heier performed work for Defendants in reliance on these promises.

88. Defendants made these promises with the reasonable expectation that their promises would induce action or forbearance by Heier.

89. Heier, to her detriment, actually and justifiable relied on the Defendants' promises that her bills would be paid.

90. As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT VI: FAILURE TO PAY COMMISSIONS PURSUANT TO OHIO REVISED CODE §1335.11

91. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

92. At all times in which Heier was acting pursuant to her contact with Studio B.C., she was considered a "principal" under R.C. §1335.11(A)(3)(a)(ii).

93. Defendants violated R.C. §1335.11(B) when it failed to pay Heier her commission during her employment with Studio B.C.

94. Defendants violated R.C. §1335.11(C) when it failed to pay Heier her commission within 30 days of the employment relationship ending.

The Employee's Attorney.™



95. Defendants failure to pay Heier her commission was willful, wanton, reckless, and in bad faith.

96. Pursuant to R.C. §1335.11(D), Heier is entitled to exemplary damages, attorney's fees, and court costs.

97. As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VII: BREACH OF CONTRACT

98. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

99. Under Heier's agreement with Studio B.C., Defendants were obligated to pay Heier an hourly wage plus a commission based on the value of services performed each month by Studio B.C.

100. Heier completed numerous services and worked many hours pursuant to the terms of her contract with Studio B.C.

101. Defendants breached their contractual obligations to Heier.

102. As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VIII: WAG E COMPLAINT RETALIATION PURSUANT TO FAIR LABOR STANDARDS ACT 29 C.F.R. §15(a)(3)

103. Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Pursuant to FLSA, 29 C.F.R. §15(a)(3), it is a violation for any employer to, "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding

The Employee's Attorney.™



under or related to this Act, or as testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

105.     Throughout the months of May and June, 2017, Heier complained both verbally and in writing to Defendants about their unlawful payroll practices and wage violations.

106.     On or about June 22, 2017, Heier again questioned Defendants regarding the unlawful payroll practices and wage violations.

107.     Defendants then terminated Heier.

108.     Defendants' termination of Heier was direct retaliation for her complaints regarding Defendants' failure to pay minimum wage, overtime, commission, and timely payroll checks.

109.     As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IX: WAGE COMPLAINT RETALIATION PURSUANT TO R.C. §4111.13(B)

110.     Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111.     R.C. §4113.13(B) provides that, "No employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with sections 4111.01 to 4111.17 of the Revised Code, or because the employee has made any complaint or it about to cause to be instituted any proceeding under or related to those sections, or because the employee has testified or is about to testify in any proceedings."

112.     Throughout the months of May and June, 2017, Heier complained both verbally and in writing to Defendants about their unlawful payroll practices and wage violations.

The Employee's Attorney.™



113.     On or about June 22, 2017, Heier again questioned Defendants regarding the unlawful payroll practices and wage violations.

114.     Defendants then terminated Heier.

115.     Defendants' termination of Heier was direct retaliation for her complaints regarding Defendants' failure to pay minimum wage, overtime, commission, and timely payroll checks.

116.     As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT X: RETALIATION BY FALSE JOB REFERENCE

117.     Heier restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118.     R.C. §4113.71 provides that an employer will be liable for giving a negative reference to another employer if the employer knows the information contained in the reference is false, or makes the disclosure with the intent to mislead, in bad faith, or with a malicious purpose.

119.     After being terminated from Studio B.C., Heier obtained employment at Evolutions Salon.

120.     Shortly after beginning her work at Evolutions, Heier was told by Evolutions management that the salon had been informed that the reason for Heier's termination from Studio B.C. was that she stole the Studio B.C. credit card for personal use.

121.     Evolutions then found reasons to terminate Heier.

122.     Since this false information was spread by Defendants, Heier was has been unable to find employment at other salons in the area despite making reasonable efforts at obtaining gainful employment.

The Employee's Attorney.™



123.     As a result of Defendants' acts, Heier has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Jessica S. Heier demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Heier for emotional distress, personal injury, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award to Heier unpaid wages as to be determined at trial together with any liquidated damages allowed by FLSA;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of exemplary damage for her claims as allowable under law;

(e) An award of reasonable attorney's fees and non-taxable costs for her claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.


Respectfully submitted,

*/s/ Amanda M. Boutton*
Brian D. Spitz (0068816)
Amanda M. Boutton (0093659)
**THE SPITZ LAW FIRM, LLC**
Water Tower Plaza
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
          amanda.boutton@spitzlawfirm.com

*Attorneys for Plaintiff Jessica Heier*

The Employee's Attorney.™



## **JURY DEMAND**

Plaintiff Jessica S. Heier demands a trial by jury by the maximum number of jurors permitted.

Respectfully submitted,

*/s/ Amanda M. Boutton*
Amanda M. Boutton (0093659)
**THE SPITZ LAW FIRM, LLC**

The Employee's Attorney.™

